## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

SUNSHINE SHOPPING CENTER, INC.    )
d/b/a SUNSHINE MALL,    )
    )
        Plaintiff,    )
    )    **Civil Action No. 2015-0041**
        v.    )
    )
LG ELECTRONICS PANAMA, S.A., and    )
ENGINEERING SYSTEMS & SALES, INC.    )
d/b/a ENSYSA,    )
    )
        Defendants.    )
_____    )

**Attorneys:**
**Edward L. Barry, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiff*

**Michael C. Quinn, Esq.,**
St. Thomas, U.S.V.I.
    *For Defendant LG Electronics Panama, S.A.*

**Anna Washburn, Esq.,**
St. Croix, U.S.V.I.
**Orlando Fernandez-Carmona, Esq.,**
Guaynabo, P.R.
    *For Defendant Engineering Systems & Sales, Inc.*

## <u>MEMORANDUM OPINION</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the Notice of Objection to Magistrate Order

("Objection") (Dkt. No. 48) filed by Plaintiff Sunshine Shopping Center, Inc., d/b/a Sunshine Mall

("Plaintiff" or "Sunshine"). Plaintiff objects to the Magistrate Judge's Order (Dkt. No. 47) granting

Defendant LG Electronics Panama, S.A.'s ("LG Panama") "Motion for an Order Compelling

Arbitration and Dismissing Plaintiff's Complaint or Staying these Proceedings" ("Motion to

Compel Arbitration") (Dkt. No. 20). LG Panama filed a Response to Plaintiff's Objection

("Response") (Dkt. No. 55), to which Plaintiff filed a Reply ("Reply") (Dkt. No. 56). For the

reasons that follow, the Court will (1) vacate the Magistrate Judge's Order in light of Plaintiff's

Objection; (2) deny without prejudice LG Panama's Motion to Compel Arbitration; and (3) grant

Plaintiff's request for limited discovery on the issue of arbitrability.

## I.    BACKGROUND

This action arose out of a dispute among the parties related to the installation of a

commercial air conditioning system at the Sunshine Mall in St. Croix, which is operated by

Plaintiff. The complaint advances breach of contract and negligent misrepresentation claims

against Defendants LG Panama, Engineering Systems & Sales, Inc., d/b/a ENSYSA ("ENSYSA"),

and Jacques Etienne ("Etienne"), following Defendants' alleged failure to install commercial air

conditioning systems as agreed by contract. (Dkt. No. 1).  Plaintiff's claims against Etienne were

dismissed without prejudice by stipulation. (Dkt. Nos. 39, 41). Accordingly, only LG Panama and

ENSYSA remain as Defendants in this matter.

### A.    Motion to Compel Arbitration

LG Panama filed a Motion to Compel Arbitration pursuant to Federal Rule of Civil

Procedure 12(b)(3), and a corresponding Memorandum of Law in Support  (Dkt. Nos. 20, 21). In

support of its Motion to Compel Arbitration, LG Panama asserted that this Court is not the proper

venue for Plaintiff's action, and requested the entry of an order compelling Plaintiff to arbitrate its

claims against LG Panama in Panama City, Panama, as allegedly required by the parties' contract.

(Dkt. No. 21 at 1-2). LG Panama further argued that only Plaintiff and ENSYSA are parties to the

contract upon which Plaintiff's claims are based, and that LG Panama's liability under that contract

is therefore a legal impossibility. *Id.* at 2-4. LG Panama maintained that a separate contract—titled

a Master Supply Agreement ("MSA")—is the controlling contract between LG Panama and Plaintiff. *Id.* at 4-5. Because the MSA contains an arbitration provision in which the parties agree that disputes arising out of the contract shall be resolved by arbitration, LG Panama argued that the Court should enforce the arbitration provision and compel Plaintiff to arbitrate its claims against LG Panama as provided by the MSA. *Id.* at 4-13.

In opposition to LG Panama's Motion to Compel Arbitration, Plaintiff argued, *inter alia*, that the MSA is a "sham agreement creating a fictitious and meaningless distributorship relationship," and that "there was never a meeting of the minds on any agreement to arbitrate." (Dkt. No. 27 at 1). Plaintiff claimed that the sole purpose of the MSA was to enable LG Panama to register Plaintiff as a customer in its internal system, and that the parties never intended the MSA as a binding agreement covering LG Panama's sale of goods to Plaintiff. *Id.* at 6. In support of its argument, Plaintiff relied on a declaration by its representative, Hatim Yusuf, along with email communications between Plaintiff and LG Panama purportedly demonstrating that execution of the MSA was strictly intended for purposes of registering Plaintiff on LG Panama's internal sales system. *Id.* at 7-8.

### B.    Magistrate Judge's Order and Plaintiff's Objection

In ruling on LG Panama's Motion to Compel Arbitration, the Magistrate Judge found that: (1) LG Panama was not a party to the contract between ENSYSA and Plaintiff upon which Plaintiff's claims are based; (2) the MSA is an enforceable contract; (3) the MSA's clear and unambiguous arbitration provision is binding on the parties; and (4) Plaintiff may not introduce extrinsic evidence to "create an ambiguity" in its terms. (Dkt. No. 47 at 2-4). The Magistrate Judge therefore granted LG Panama's Motion to Compel Arbitration and stayed proceedings against LG Panama in this matter pending arbitration of Plaintiff's claims against it. *Id.* at 4-5.

In its Objection to the Magistrate Judge's Order, Plaintiff focuses on the narrow issue of whether the Magistrate Judge's determination that extrinsic evidence related to the formation of the MSA was barred by the parol evidence rule constitutes clear legal error. (Dkt. No. 48 at 3). Plaintiff maintains that Virgin Islands law recognizes the common law concept of a "sham contract"—one which, although held up as an enforceable contract, was not intended or understood by either party to constitute a binding legal agreement because it was entered into with an ulterior purpose. *Id.* at 8-9. Plaintiff contends that the MSA was a sham because its ulterior purpose— which Plaintiff maintains is explicitly recognized in the parties' written statements with respect to the MSA—"was merely to set Sunshine up as a customer in LG-Panama's accounting system." *Id.* at 13. Plaintiff also argues that further negotiations between LG Panama and Plaintiff following ENSYSA's failure to perform demonstrate that neither LG Panama nor Plaintiff considered the MSA a binding contractual agreement. *Id.* at 14. Plaintiff maintains that where "the existing factual record is inadequate to resolve the fact issues surrounding the formation of [an] agreement [to arbitrate] . . . the party resisting arbitration 'must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement.'" *Id.* at 14-15 (quoting *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013)). Plaintiff therefore urges the Court to vacate the Magistrate Judge's Order granting LG Panama's Motion to Compel Arbitration, and to (1) deny LG Panama's Motion to Compel Arbitration on the record developed in the parties' filings, or (2) deny LG Panama's Motion to Compel Arbitration without prejudice and allow Plaintiff an opportunity for limited discovery on the issue of arbitrability. *Id.* at 16.

LG Panama responds that the Magistrate Judge's Order contains no legal error, and that the clear and unambiguous terms of the MSA prevent the introduction of parol

evidence. (Dkt. No. 55 at 8). LG Panama also maintains that because Plaintiff's representative—Hasim Yusuf—signed the MSA, intent to be bound by the terms of the agreement is presumed, and parol evidence is not admissible to show otherwise. *Id.* at 13. Finally, LG Panama argues that the existence of an integration agreement in the MSA precludes the admission of parol evidence under the circumstances here. *Id.* at 14-16.

## II.      APPLICABLE LEGAL PRINCIPLES

### A.      Standard of Review

Because a decision to compel arbitration and stay litigation pending its resolution has been recognized as a non-dispositive matter in the Third Circuit, the Court reviews the Magistrate Judge's determination under a "clearly erroneous or contrary to law" standard. *See* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any [non-dispositive] pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law"); FED. R. CIV. P. 72(a) (providing that a district judge "must consider timely objections and modify or set aside any part of [an] order [on a non-dispositive matter] that is clearly erroneous or is contrary to law"); *see also Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 134 (3d Cir. 2014) ("A ruling on a motion to compel arbitration does not dispose of the case, or any claim or defense found therein. Instead, orders granting this type of motion merely suspend the litigation while orders denying it continue the underlying litigation.") (citing *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010)).

A factual finding "is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1035, 1037 (D.N.J. 1995) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948)). "In reviewing a

magistrate judge's factual determinations [on a non-dispositive matter], a district court may not consider any evidence which was not presented to the magistrate judge." *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205, 213 (D.N.J. 1997) (citing *Haines v. Liggett Group. Inc.,* 975 F.2d 81, 92 (3d Cir. 1992)).

On the other hand, district courts conduct a *de novo* review of a magistrate judge's legal conclusions on non-dispositive matters where a party objects on the basis that those conclusions were contrary to law. *Equal Employment Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (for a non-dispositive motion referred to a magistrate judge, district courts "review[] findings of fact for clear error and [] review matters of law *de novo*") (citation omitted). "A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *Kounelis v. Sherrer,* 529 F. Supp. 2d 503, 518 (D.N.J. 2008) (quoting *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998)). Thus, the Court will review the Magistrate Judge's factual findings for clear error—considering only that evidence which was before the Magistrate Judge when he made his ruling—and will conduct a *de novo* review of his conclusions of law.

### B.    Other Legal Principles

#### 1.  General Arbitration Principles

LG Panama advances its Motion to Compel Arbitration pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("CREFAA"), which is enforced in the United States under Chapter Two of the Federal Arbitration Act, 9 U.S.C. § 201, *et seq.* ("FAA"). *See Sandvik AB v. Advent Inter. Corp.*, 220 F.3d 99, 102, 104-05 (3d Cir. 2000) (recognizing that the United States is a signatory to the CREFAA and that the CREFAA is implemented domestically through the FAA). "The CREFAA commits the courts of signatory states to refer

parties to arbitration when the parties have agreed to arbitrate disputes." *Id.* at 104-5; *see also* 9 U.S.C. § 206 (providing that a district court "may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States"). "The domestic FAA applies to actions brought under the [CREFAA] to the extent that the two are not in conflict." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009) (citing 9 U.S.C. § 208; *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 280 (3d Cir. 2003)).

In passing the FAA, Congress "expressed a strong federal policy in favor of resolving disputes through arbitration." *Century Indem. Co.*, 584 F.3d at 522 (citations omitted). Where a party petitions to enforce an arbitration agreement, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Sandvik*, 220 F.3d at 104 (quoting 9 U.S.C. § 4). "The presumption in favor of arbitration carries 'special force' when international commerce is involved." *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.,* 473 U.S. 614, 631 (1985)).

However, the strong presumption in favor of arbitration "does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute." *Century Indem. Co.*, 584 F.3d at 523. Rather, before granting a motion to compel arbitration, a district court "must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Id.* (citations omitted). With respect to the validity of an arbitration agreement, the FAA provides, in pertinent part, that "[a] written provision in . . . a contract . . . to settle by arbitration an existing controversy arising out of such a contract . . . shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

### 2. Validity Challenges to Arbitration Contracts

Where an arbitration provision is contained within a larger contract, the arbitration provision itself is severable from the remainder of the contract. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). The severability of arbitration provisions is of particular consequence where a court is considering a party's opposition to a motion to compel arbitration. As the Supreme Court has explained:

> There are two types of validity challenges under [9 U.S.C.] § 2: "One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye*, 546 U.S., at 444 []. . . . [O]nly the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404 [] (1967); *Buckeye, supra*, at 444-446 []; *Preston v. Ferrer*, 552 U.S. 346, 353-354 [] (2008). That is because § 2 states that a "written provision" "to settle by arbitration a controversy" is "valid, irrevocable, and enforceable" *without mention* of the validity of the contract in which it is contained. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (footnote omitted) (emphasis in the original). As such, a district court must consider a party's challenge to the validity of an arbitration agreement where a party makes a specific attack on the arbitration provision. *Rent-A-Center*, 561 U.S. at 71. On the other hand, where a party attacks the validity of a contract as a whole rather than its arbitration provision specifically, the determination of the validity of the *contract* is an issue to be determined in the first instance by the arbitrator. *Buckeye*, 546 U.S. at 445–46 ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."). The *Buckeye* Court also made clear that a

challenge to the validity of a contract—regardless of whether the contract is challenged as void or voidable under state law—is a matter for determination by the arbitrator.[1]

While the Supreme Court in *Buckeye* eliminated any distinction between void and voidable contracts, it recognized a distinction between the issue of a contract's validity and "the issue whether any agreement between the alleged obligor and oblige was ever concluded." *Id.* at 445 n.1. The *Buckeye* Court noted that its opinion was addressing only the former issue (contract validity) in concluding that it was an arbitrator's decision, and was *not* speaking to the issue addressed in a series of cases holding that:

> [I]t is for courts to decide whether the alleged obligor ever signed the contract, *Chastain v. Robinson–Humphrey Co.,* 957 F.2d 851 (C.A.11 1992), whether the signor lacked authority to commit the alleged principal, *Sandvik AB v. Advent Int'l Corp.,* 220 F.3d 99 (C.A.3 2000); *Sphere Drake Ins. Ltd. v. All American Ins. Co.,* 256 F.3d 587 (C.A.7 2001), and whether the signor lacked the mental capacity to assent, *Spahr v. Secco,* 330 F.3d 1266 (C.A.10 2003).

*Id.*

The scope of this exception to the arbitrability of challenges to the contract as a whole has not been entirely clear in the wake of *Buckeye*. However, courts and commentators have pointed to the Supreme Court's subsequent pronouncement in *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010)—that "[i]t is [] well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide"—for the proposition that, even where an

---

[1] Before the Supreme Court's opinion in *Buckeye*, a number of courts—including the Third Circuit—held that a challenge to a contract as "void" was a challenge to the contract's *existence*, and thus a matter for determination by a district court even where an attack was made on the contract as a whole rather than on an arbitration provision in particular. *See Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 107 (3d Cir. 2000) (noting that in the analysis of whether the existence of an underlying contract is at issue, "we draw a distinction between contracts that are asserted to be 'void' or non-existent, as is contended here, and those that are merely 'voidable' . . . ."). The Supreme Court in *Buckeye* rejected such a distinction. *Buckeye*, 546 U.S. at 447-48 (holding that the term "contract" for purposes of the FAA includes contracts that later prove to be void, such that a challenge to a contract as void is a question for the arbitrator).

attack goes to the contract as a whole, a district court must resolve issues of contract formation in the first instance. *Granite Rock*, 561 U.S. at 296; *see also SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 271 (3d Cir. 2013) (holding that a "challenge to a contract on the grounds that the signatory was unauthorized to sign it" constituted "a challenge to a contract's formation rather than its validity" and as such was a matter to be determined by the district court in the first instance) (citing *Sandvik*, 220 F.3d at 100-01).

### 3. Legal Standards in Resolving a Motion to Compel Arbitration

The Third Circuit has provided specific guidance with regard to "the standard for district courts to apply when determining whether, in a specific case, an agreement to arbitrate was actually reached." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013). The standard varies depending on the circumstances presented.

The first scenario arises "'when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause . . . .'" *Id.* at 776 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). In these cases, the motion to compel arbitration should be considered under a motion to dismiss standard pursuant to Federal Rule of Civil Procedure 12(b)(6), and no further discovery should be permitted. *Id.*

The second scenario arises where either "the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue . . . ." *Id.* (citing *Somerset*, 832 F. Supp. 2d. at 482). Under these circumstances, "the parties should be entitled to discovery on the question of arbitrability," after which the district court "may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment

standard" pursuant to Federal Rule of Civil Procedure 56(a). *Id.* (quoting *Somerset*, 832 F. Supp. 2d. at 482). Where a genuine dispute of material fact regarding the formation of an arbitration agreement remains following this limited discovery, a "court may then proceed summarily to a trial regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA envisions." *Id.* (quoting *Somerset*, 832 F. Supp. 2d at 482 (citing 9 U.S.C. § 4)).

With these legal principles in mind, the Court turns to its analysis of Plaintiff's Objection to the Magistrate Judge's Order granting LG Panama's Motion to Compel Arbitration.

### III.    DISCUSSION

Although Plaintiff's Objection is limited to the narrow issue whether the Magistrate Judge committed clear error by refusing to examine extrinsic evidence related to the formation of the MSA, the Court's analysis must begin by addressing the threshold question of whether Plaintiff's challenge to the MSA presents a question of contract validity or contract formation.

Plaintiff's opposition to LG Panama's Motion to Compel Arbitration presents an attack on the MSA as a whole. Plaintiff maintains:

> The 2012 Master Supply Agreement (*the agreement containing the arbitration clause relied upon*) was a sham, and set forth a purely fictitious distributor/product reseller relationship between LG-Panama and Sunshine Mall that was never in fact contemplated, and [was] executed for the sole stated purpose of registering Plaintiff as a "customer" in [LG-Panama's] internal system; the parties never intended [the MSA] as a final agreement covering specific goods sold to Sunshine Mall and ancillary engineering services.

(Dkt. No. 27 at 6) (emphasis added). Based on its assertion that the MSA as a whole was a sham contract, Plaintiff argues that "there was never a meeting of the minds on any agreement to arbitrate." *Id.* at 1. In other words, it is Plaintiff's contention that the contract as a whole is a sham that provides the basis for its attack on the MSA's arbitration provision.

Accordingly, Plaintiff's attack in this case fits squarely into that class of challenges that target "the contract as a whole . . . on a ground that directly affects the entire agreement." *Buckeye*, 546 U.S. at 444. Thus, if the sham contract argument raised by Plaintiff presents a question of contract validity, the Magistrate Judge should not have entertained Plaintiff's arguments *at all* as contract validity is a question for the arbitrator in the first instance. On the other hand, if the argument presents a question of contract formation, the Court must determine whether the MSA (and thus, the arbitration provision contained therein) was ever formed.

### A.     Formation or Validity

In this case, Plaintiff does not dispute that its representative—Hasim Yusuf—signed and executed the MSA. It also does not dispute that the MSA contains both an arbitration and an integration provision.[2] Rather, Plaintiff contends—pointing to a series of email communications

---

[2] The arbitration provision of the MSA reads:

> All disputes, controversies or disagreements which may arise between the parties, in relation to or in connection with this Agreement, or for the breach hereof shall be finally settled by means of arbitration in Law according to the Rules of the Center for Conciliation and Arbitration of the Panama Chamber of Commerce and Industries. The language of the arbitration shall be Spanish and it shall be done in the main offices of the Center for Conciliation and Arbitration in Panama City. The arbitration panel shall be composed of three (3) arbitrators.

(Dkt. No. 21-1 at 2). The merger clause appears at section 15 of the MSA, which is titled "Entire Agreement" and provides:

> This Agreement constitutes the final agreement between the parties. It is the complete and exclusive representation of the parties' agreement on the matters contained in this Agreement. All prior and contemporaneous negotiations and agreements between the parties on the matter contained in this Agreement are expressly merged into and superseded by this Agreement. The provisions of this Agreement may not be explained, supplemented, or qualified through evidence of trade usage or a prior course of dealings. In entering into this Agreement, neither party has relied upon any statement, representation, warranty, or agreement of the other party except for those expressly contained in this Agreement. There

between Mr. Yusuf and alleged representatives of LG Panama—that although the MSA appears to be a valid binding contract on its face, the parties never intended the MSA to serve as a legally-binding contract. Plaintiff therefore refers to the MSA as a sham contract, and asserts that because the parties never intended the MSA to be binding, a threshold question concerning whether the parties ever formed a contract is present here. (Dkt. No. 56 at 5-7).

Under Virgin Islands law, the formation of "a valid contract requires a 'bargain in which there is a mutual assent to the exchange, and consideration.'" *Valentin v. Grapetree Shores*, 2015 WL 13579631, at *3 (V.I. Super. June 30, 2015) (quoting *Morales v. Sun Constructors, Inc.,* 541 F.3d 218, 221 (3d Cir. 2008)) (additional citations omitted). A party's assent to a bargain "is not measured by subjective intent, but by outward expression." *Id.* (citing *Morales,* 541 F.3d at 221; *Fitz v. Islands Mech. Contractor, Inc.,* 53 V.I. 806, 820 (D.V.I. 2010)). However, the Virgin Islands Supreme Court has recognized in dicta that, under certain circumstances, "extrinsic evidence may be admissible to demonstrate an intent different from that expressed in the contract." *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 625 n.7 (2017). The *Phillip* Court noted that such a circumstance may arise where a party alleges that a contract was a sham. *Id.* (quoting *Tangren Family Trust v. Tangren*, 182 P.3d 326, 330–31 (Utah 2008) ("[E]xtrinsic evidence is appropriately considered, even in the face of a clear integration clause, where the contract is alleged to be a forgery, a joke, *a sham*, lacking in consideration, or where a contract is voidable for fraud, duress, mistake, or illegality.") (emphasis added)).

---

are no conditions precedent to the effectiveness of this Agreement other than those expressly stated in this Agreement.

*Id.*

American Law Reports defines a "sham contract" as one which is "not intended to create any legal relations between the parties, and is made for an ulterior purpose not disclosed in nor deducible from the terms of the agreement." 71 A.L.R. 2d 382. Further, the Restatement (Second) of Contracts ("the Restatement") discusses sham contracts in the context of the requirement of mutual assent to the formation of a contract, and provides: "Where all the parties to what would otherwise be a bargain manifest an intention that the transaction is not to be taken seriously, there is no such manifestation of assent to the exchange as is required" for formation of a contract. RESTATEMENT (SECOND) OF CONTRACTS § 18, Comment C.

Plaintiff argues that, because it confirmed with LG Panama that execution of the MSA was merely a matter of procedure necessary to register Plaintiff as an LG Panama customer in its database, neither party intended the MSA to be binding upon it. Rather, Plaintiff contends that the parties executed the MSA solely for the "ulterior purpose" of registering Plaintiff in LG Panama's system. Plaintiff therefore contends that an issue of contract formation—the parties' intent to be bound by the MSA—is present here.

LG Panama argues that Plaintiff's purported sham contract argument is, in reality, an allegation that LG Panama induced Plaintiff to execute the MSA through fraud. (Dkt. No. 40 at 9). Because an allegation of fraud in the inducement is an issue for determination by an arbitrator in the first instance, LG Panama asserts that Plaintiff has failed to raise an issue of contract formation for the Court's resolution. (Dkt. No. 55 at 9).

LG Panama is correct that if Plaintiff's argument is based on a theory that LG Panama fraudulently induced Plaintiff to enter into the MSA, that question is reserved for the arbitrator. *See S. Jersey Sanitation Co., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 840 F.3d 138, 144-45 (3d Cir. 2016) (noting that where a contract contains a clear arbitration provision,

"the [FAA] does not permit the federal court[s] to consider claims of fraud in the inducement of the contract generally") (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)) (internal quotation marks omitted). Accordingly, the Court must determine whether Plaintiff's challenge to the MSA is properly viewed as grounded in a sham contract or a fraudulent inducement theory.

Black's Law Dictionary defines fraud in the inducement as:

> Fraud occurring when a misrepresentation leads another to enter into a transaction with a false impression of the risks, duties, or obligations involved; an intentional misrepresentation of a material risk or duty reasonably relied on, thereby injuring the other party without vitiating the contract itself, esp. about a fact relating to value or the ability to perform.

FRAUD, Black's Law Dictionary (10th ed. 2014). The Third Circuit has recognized that a claim for fraud in the inducement is made where one party's misrepresentation "induces a party to assent to something he otherwise would not have . . . ." *Connors v. Fawn Min. Corp.*, 30 F.3d 483, 490 (3d Cir. 1994). In the Virgin Islands, the elements of a fraudulent inducement claim are: "(1) a false representation, (2) in reference to [a] material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) detrimental reliance, or action taken in reliance upon the representation." *Kiskidee, LLC v. Certain Interested Underwriters at Lloyd's of London Subscribing To Policy No. NB043060b*, 2012 WL 952752, at *2 (D.V.I. Mar. 21, 2012) (internal quotations and quotation marks omitted).

In the Court's view, the distinguishing feature, for present purposes, between the allegation of a sham contract and the allegation of fraudulent inducement is the question of whether the parties intended to be bound by an agreement. Where a party alleges fraudulent inducement, it is *not* alleging that it never intended to be bound by an agreement. Rather, the party claims that it intended to be bound by an agreement, but that its assent to certain aspects of the agreement was

procured by the other party's misrepresentation. In other words, the party was misled as to a risk, duty, or obligation of the particular agreement. *See, e.g., Ross v. Hodge*, 58 V.I. 292, 313 (2013) (claim that one party deliberately misled another "into believing that his signature on the quitclaim deed was needed for her to acquire a small loan . . . when in actuality his signature on the document effectuated a transfer . . . [of property] interest" sounded in fraudulent inducement).

On the other hand, where a party alleges that a contract was a sham it is claiming that—despite the outward *appearance* of assent to an agreement—no such assent ever existed because the parties understood that their putative agreement was not to be taken seriously or not meant to be legally binding. In other words, the parties never intended to be bound by an agreement at all.

On the record here, the Court concludes that Plaintiff has sufficiently alleged a sham contract theory. Plaintiff asserts that—although the MSA has the outward appearance of a legally binding contract—neither Plaintiff nor LG Panama intended the MSA to be legally binding. Rather, Plaintiff alleges that both parties understood the MSA to be a mere procedural formality necessary for the ulterior purpose (not expressed in the MSA) of registering Plaintiff in LG Panama's internal sales system. Crucially, as discussed further below, Plaintiff has come forward with some evidence to support its assertion that both parties recognized this ulterior purpose and that neither party intended the MSA to be legally binding. Accordingly, the Court concludes that Plaintiff has attacked the MSA on a sham contract—as opposed to a fraudulent inducement—theory.

The Court further concludes that Plaintiff's sham contract argument presents a question of contract formation. An allegation that a contract was a sham raises an issue as to whether the parties ever intended to be bound by a contract—*i.e.*, whether there was an intent to enter into a contractual agreement *at all*. Such an allegation goes to the very heart of "the issue whether any

agreement . . . was ever concluded." *Buckeye*, 546 U.S. at 445 n.1. Plaintiff's sham contract argument thus strikes at the core of the formation of the MSA and, as such, is a question for this Court in the first instance.

### B.     The Parol Evidence Rule

Having determined that the question presented is one of contract formation, which is properly before this Court, the Court now turns to Plaintiff's argument that the Magistrate Judge erred in rejecting extrinsic evidence relevant to the formation of the MSA.

The Virgin Islands Supreme Court recently reviewed the principles of contract interpretation as applicable in the Territory in the case of *Phillip v. Marsh-Monsanto*, 66 V.I. 612 (2017). The *Phillip* Court explained that a court's primary objective in contract interpretation "is to ascertain and give effect to the parties' objective intent." *Id.* at 624-25 (citations omitted). In general, "[w]here the language of a contract is clear and unambiguous, the parties' intent must be derived from the plain meaning of its terms." *Id.* at 625. Further, "[i]f the language of a clear and unambiguous contract includes a merger clause, that clause precludes consideration of extrinsic evidence 'used to demonstrate an intent that contradicts or adds to the intent expressed in the contract.'" *Id.* (internal citations and parenthesis omitted).

As applied to this case, the foregoing principles suggest that the parties should be prohibited from relying on extrinsic evidence with respect to the interpretation of the MSA. The Court agrees with the Magistrate Judge's conclusion that the language of the MSA is clear and unambiguous—particularly as it relates to the settlement of disputes arising in relation to or in connection with the MSA by arbitration. The MSA also contains a merger clause, which normally would preclude the consideration of extrinsic evidence of the parties' intent in entering into the contract where it conflicts with the intent as expressed in the contract.

Nonetheless, as discussed above, the Virgin Islands Supreme Court noted in dicta that "extrinsic evidence may be admissible to demonstrate an intent different from that expressed in the contract" under certain circumstances. *Phillip*, 66 V.I. at 625 n.7. The *Phillip* Court also observed that "numerous courts recognize that a merger clause does *not* bar the introduction of extrinsic evidence amounting to fraud, *among other circumstances.*" *Id.* (emphases added). Among the "other circumstances" noted by the Virgin Islands Supreme Court were those instances where a "contract is alleged to be a forgery, a joke, *a sham*, lacking in consideration, or where a contract is voidable for fraud, duress, mistake, or illegality." *Id.* (quoting *Tangren Family Tr. v. Tangren*, 182 P.3d 326, 330-31 (Utah 2008) (emphasis added)).[3]

As Plaintiff points out in its Objection, the proposition that extrinsic evidence may be considered where a sham contract is alleged appears to be generally accepted. The Restatement (Second) of Contracts provides that "[a]greements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish . . . illegality, fraud, duress, mistake, lack of consideration, or other invalidating cause . . . ." RESTATEMENT (SECOND) OF CONTRACTS § 214. Comment C to Section 214 provides that "[w]hat appears to be a complete and binding integrated agreement may be a forgery, a joke, a sham, or an agreement without consideration . . . . Such invalidating causes need not and commonly do not appear on the face of the writing. They are not affected even by a 'merger' clause." RESTATEMENT (SECOND) OF CONTRACTS § 214, Comment C. The authors of the treatise American Jurisprudence note that "parol evidence is admissible to show that a writing which apparently constituted a contract was not intended or understood by either party to be binding as such." 29A Am. Jur. 2d Evidence §

---

[3] While the Virgin Islands Supreme Court's dicta does not, of course, constitute the law of the Territory, it does, however, serve to forecast that Court's approach to an issue.

1120. American Law Reports—collecting cases analyzing the treatment of alleged "sham agreements" by various courts—identifies the generally accepted rule that "parol evidence is always competent to show the nonexistence of a contract." 71 A.L.R. 2d 382 at § 1 (citations omitted);[4] *see also generally, Weldon v. Great White N. Distribution Servs., L.L.C.*, 197 F. Supp. 2d 893, 906–07 (E.D. Mich. 2002) (recognizing the consideration of "extrinsic evidence to show [] that the writing was a sham, not intended to create legal relations" as one of four main exceptions to the parol evidence rule) (citations omitted); *Happy Dack Trading Co. v. Agro-Indus., Inc.*, 602 F. Supp. 986, 992 (S.D.N.Y. 1984) (recognizing that the parol evidence rule does not bar consideration of extrinsic evidence "offered to show that a writing which purports to be a contract is not a contract at all, but merely a sham") (citations omitted); *Boeing Co. v. U.S.A.C. Transp., Inc.*, 539 F.2d 1228, 1230 (9th Cir. 1976) ("[Al]though parol evidence would be inadmissible to vary the terms of a valid written contract, such evidence is nevertheless admissible to show the nonexistence or invalidity of an alleged contract or that it is not a full integration of the agreement between the parties.") (citations omitted).

Given the generally recognized principle that extrinsic evidence may be considered where a party alleges that a contract was a sham—and in light of the Virgin Islands Supreme Court's acknowledgment of this principle in *Phillip*—the Court concludes that extrinsic evidence may be considered under ordinary state-law contract principles to evaluate Plaintiff's claim that no contract was formed under the circumstances here.

---

[4] An exception to the introduction of extrinsic evidence to demonstrate a sham agreement has been recognized by some authorities "where the purpose of the agreement is to defraud or mislead a third person in an illegal or immoral way"—a circumstance which is not present here. 71 A.L.R. 2d 382 at § 2.

C.      **The Parties' Evidence**

As an initial matter, the Court observes that Plaintiff's Complaint neither references the MSA nor incorporates the MSA as an attachment. Rather, LG Panama first presented the MSA to the Court through its Motion to Compel Arbitration, arguing that the MSA was in fact the controlling contract between LG Panama and Plaintiff and that the MSA's arbitration provision should be enforced. Accordingly, the circumstances of this case do not fit the first scenario envisioned by the Third Circuit in *Guidotti*, 716 F.3d 764, wherein "it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause." *Id.* at 776 (quotation omitted). Instead, this case arises under the second scenario envisioned by the *Guidotti* Court, which requires a district court to consider whether "the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue . . . ." *Id.* (quotation omitted).

LG Panama's evidence with respect to the MSA is fairly straightforward. LG Panama presents the MSA—which is signed by Hatim Yusuf on behalf of Plaintiff and by Jin Suk Son on behalf of LG Panama—as the sole and controlling contract between LG Panama and Plaintiff. (Dkt. No. 21 at 4-5; Dkt. No. 21-1 at 3). Through the declaration of Joonwoo Kim—LG Panama's former Business Director for Commercial Air Conditioning, Solar and Lighting for the Central America Region—LG Panama explains that, as a matter of policy, every customer must sign an MSA before LG Panama will sell the customer equipment, whether or not the customer is purchasing equipment for resale. (Dkt. No. 40-1 at ¶ 6). LG Panama represents that "[t]his requirement was fully explained to Plaintiff and its principal, Hatim Yusuf," and that Mr. Yusuf executed the MSA "with full understanding of its purpose and validity." *Id.* LG Panama also maintains that Mr. Yusuf never indicated to LG Panama that he did not understand the MSA, and

that he "executed the MSA without comment or suggested editing." *Id.* at ¶ 9. LG Panama therefore argues that Plaintiff should not be permitted to claim that the MSA—which Mr. Yusuf reviewed and executed as Plaintiff's representative—was never intended by the parties to represent a final agreement, particularly given the definitive integration clause contained in the MSA. (Dkt. No. 40 at 2).

Plaintiff, on the other hand, represents through the declaration of Hatim Yusuf—Plaintiff's Managing Director—that it was informed by LG Panama representatives that Plaintiff had to be "registered as a customer" in LG Panama's system before the terms of any contract for the sale of air conditioning equipment could be negotiated, and that "signing the Master Supply Agreement would facilitate that process." (Dkt. No. 27-1 at 2). Plaintiff also maintains that Mr. Yusuf "carefully confirmed" through emails to LG Panama representative Juan Macia that the MSA was "strictly 'procedural'" and that it was "not intended to create any contractual obligations." (Dkt. No. 27 at 7).

The email exhibits accompanying Plaintiff's Opposition to the Motion to Compel Arbitration show a series of alleged communications between Mr. Macia and Mr. Yusuf on August 9, 2012. According to the emails, Mr. Macia wrote Mr. Yusuf at 5:37 p.m. and requested that he complete forms attached to the email so that "we [LG Panama] can create you as a customer in Panama." (Dkt. No. 28-2 at 2). Mr. Macia represented that completion of the forms was "necessary to complete the order." *Id.*[5] Mr. Yusuf responded shortly thereafter: "We will do so if you confirm

---

[5] Mr. Macia's email to Mr. Yusuf contains what appears to be an internal email from LG Panama employee Maria Medina to Mr. Macia and others. That email, which is addressed "Dear Customer," explains:

> Effective April 9th, 2012, LG Electronics Panama, SA requires that all customers have a Customer Number. The Customer Account allow [*sic*] us to register all your purchases and

that this in no way creates a contractual obligation and merely procedural [*sic*]. We still need to get information from LG in order to make an informed decision." *Id.* Mr. Macia then wrote back: "Filling out these forms does not compromise your company with anything. This is only to create your company as a customer in our accounting department." *Id.* at 1. Plaintiff relies on these emails—along with subsequent correspondence between Plaintiff and LG Panama—to advance its argument that the intent of the parties in executing the MSA was simply to register Plaintiff in LG Panama's customer database, and neither party intended the MSA to create contractual obligations. (Dkt. No. 27 at 7-9).

In light of this evidence, the Court concludes that Plaintiff has put forth sufficient facts to place in issue whether the parties intended to be bound by the MSA. If there was no such intent, then the MSA was a sham, and—despite outward appearances—a contract (including the arbitration agreement contained therein) was never formed.

## IV.    CONCLUSION

In sum, the Court concludes that the Magistrate Judge erred in refusing to examine extrinsic evidence related to the MSA in ruling on LG Panama's Motion to Compel Arbitration. Having considered this extrinsic evidence and the record before it, the Court finds that Plaintiff has

---

payments direct [*sic*] to your account. Purchase will be Pre-Paid, unless a formal Credit Application was completed and approved by LGE.

Please, find attached the documents that you need to complete and return as soon as possible, in order to create your Customer Number. It is very important to include copy [*sic*] of your Company Business Registration and Identification.

….

(Dkt. No. 28-2 at 2-3). It appears that a copy of a Master Supply Agreement in English is attached to the bottom of the email.

responded to LG Panama's Motion to Compel Arbitration with sufficient facts to place the formation of the MSA in issue. The Court may not compel Plaintiff to arbitrate its claims absent a determination by the Court that the parties entered into a binding agreement to arbitrate those claims. Therefore, the Court will vacate the Magistrate Judge's Order granting LG Panama's Motion to Compel Arbitration and will deny LG Panama's Motion without prejudice.

Because the Court concludes that a question of contract formation—whether the parties intended the MSA to be a legally-binding contract—has been raised here, the Court will grant Plaintiff's request for limited discovery on that issue. *See Guidotti*, 716 F.3d at 776 (establishing that a district court should permit discovery on the question of arbitrability where a plaintiff has responded to a motion to compel arbitration with facts sufficient to place the agreement to arbitrate in question). Following the limited discovery, LG Panama may renew its Motion to Compel Arbitration. If at that point a genuine dispute of material fact regarding the parties' intent to be bound by the MSA exists, this matter will proceed to trial on that question.

An appropriate Order accompanies this Memorandum Opinion.

Date: September 21, 2018

_____/s/_____
WILMA A. LEWIS
Chief Judge