**DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

| | |
|---|---|
| **SUNSHINE SHOPPING CENTER, INC.,**<br><br>Sunshine,<br><br>v.<br><br>**LG ELECTRONICS PANAMA, S.A.,** a Panama corporation; **ENGINEERING SYSTEMS & SALES, INC.,** a Puerto Rico corporation d/b/a "ENSYSA,"<br><br>Defendants.<br>_____ | 1:15-cv-00041-WAL-EAH |

**TO:**   Edward L. Barry, Esq.,
             *For Plaintiff Sunshine Shopping Center, Inc.*
         **Charlotte K. Perrell, Esq.,**
         **Michael C. Quinn, Esq.,**
             *For Defendant LG Electronics Panama, S.A.*
         **James L. Hymes, III, Esq.,**
         **Orlando Fernandez-Carmona, Esq.**
             *For Defendant Engineering Systems & Sales Inc.*

**REPORT AND RECOMMENDATION**

THIS MATTER comes before the Court on an Order by the District Court for a Report & Recommendation ("R&R") on the motion for summary judgment filed by Defendant Engineering System & Sales, Inc. ("Ensysa"). Dkt. No. 125. For the reasons that follow, the Court recommends that the motion for summary judgment be denied.

**BACKGROUND**

**I.   Procedural Background**

Plaintiff Sunshine Shopping Center, Inc. ("Sunshine"), located on St. Croix, Virgin Islands, filed a breach of contract complaint in May 2015 against Defendants[1] LG Electronics

---

[1] The Complaint collectively referred to LG, Ensysa, and Etienne as "Defendants" when it discussed the breach of contract claim. Dkt. No. 1 ¶¶ 40-48. But the Complaint never alleged

Panama, S.A. ("LG"), Ensysa, and LG's Sales Manager, Jacques Etienne, claiming that Ensysa breached its contract with Sunshine by failing to fulfill its obligations to train and certify a Heating, Ventilation, and Air Conditioning ("HVAC") contractor, to install the equipment, to supervise the contractor in the installation process, and to perform other essential design and engineering work needed for installation. Dkt. No. 1.

Specifically, the Complaint alleged that Etienne solicited Sunshine to purchase air conditioning equipment from LG. *Id*. ¶¶ 13-15. According to Sunshine, LG would be responsible for the design and engineering aspects of the installation and operation of the equipment and would certify, train, and supervise a contractor in its installation. *Id*. ¶¶ 16-17, 19. However, LG suggested that its newly-designated master distributor, Ensysa, fulfill those obligations. *Id*. ¶¶ 20-21. Consequently, Sunshine and Ensysa entered into a contract in August 2013, which included provisions that Ensysa would sell "sufficient" air conditioning equipment to Sunshine to cool the shopping center, conduct an accurate load calculation and design analysis of the equipment, train and certify a contractor, and supervise the contractor in the installation process. *Id*. ¶ 22. While the Complaint indicated that the contract would be attached as Exhibit 1, Dkt. No. 1 at 4-5, no contract was attached.

---

the existence of any contract between LG and Sunshine, although it did allege that Sunshine made additional payments for equipment to LG and that LG failed to perform certain obligations such as installation. Dkt. No. 1 ¶¶ 28, 36.

*Sunshine Shopping Center v. LG Electronics Panama, S.A. et al*
1:15-cv-00041-WAL-EAH
Report and Recommendation
Page 3

Sunshine alleged two causes of action against all Defendants: (1) breach of contract and (2) negligent misrepresentation. Dkt. No. 1. Ensysa filed an answer in August 2015, Dkt. No. 22, and discovery took place, including Sunshine's deposition of Ensysa.[2] Dkt. No. 114.

## II. Motion for Summary Judgment

In March 2020, Ensysa filed the instant motion for summary judgment. Dkt. No. 125. It argued that it fully complied with its obligations under the contract when it sold the air conditioning equipment to Sunshine, because its design, certifcation, and installation supervision duties were subject to a condition precedent that Sunshine had not fulfilled—naming an HVAC contractor while Ensysa had an open Training Academy[3]—and thus it could not be held liable for a breach. Dkt. No. 125 at 3-7. Ensysa attached a copy of its contract with Sunshine. Dkt. No. 125-3 (Sunshine-Ensysa Contract). It also included an affidavit of its President, Rolando Avila Champana, as support for its condition precedent argument. Dkt. No. 125-2. Sunshine opposed, contending that the plain language of the contract set out Ensysa's obligations to train and certify a contractor, without any condition precedent, and to supervise the equipment installation, which Ensysa failed to do. Dkt. No. 129-1 at 4-6.

---

[2] Because the summary judgment motion involves only Ensysa, this R&R will not include the procedural history as to LG or Etienne.

[3] The Complaint did not detail the contract provisions regarding Ensysa's training and certification of an HVAC contractor. However, the contract between Sunshine and Ensysa provided that Ensysa would certify a contractor after the contractor received two days of training in San Juan, Puerto Rico. Dkt. No. 127-2 at 1.1.1. At the time of contracting, Ensysa had a Training Academy in San Juan, where it certified HVAC contractors and taught them about LG products. Dkt. No. 127-5 (Ensysa Dep. Excerpts) at 17-22.

### A. Undisputed Facts

The facts—as set forth in the parties' respective Statements of Material Facts—are undisputed, except where indicated below, and are supported by the record.

In 2012, LG and Sunshine engaged in negotiations for Sunshine to purchase air conditioning equipment for the common areas of its shopping center. Dkt. No. 125-1 (Ensysa's Stmt. of Undisputed Facts) ¶ 4; Dkt. No. 128 (Sunshine's Stmt. of Undisputed Facts) ¶ 4. In December 2012, Ensysa contracted with LG to distribute LG air conditioning equipment in Puerto Rico and the U.S. Virgin Islands. Dkt. Nos. 125-1 and 128, ¶ 1; Dkt. No. 127-1 (LG-Ensysa Contract). Based on that distribution contract, Sunshine entered into a contract with Ensysa in August 2013 to purchase LG-manufactured air conditioning equipment from Ensysa to air condition certain areas of the shopping center. Dkt. Nos. 125-1 and 128, ¶ 5; Dkt. No. 127-2. The contract included a number of provisions that described Ensysa's obligations concerning training and certification of a contractor and installation of the equipment, such as:

- "Sunshine shall select an HVAC contractor to install the Equipment . . . The contractor shall be an experienced contractor . . . previously and currently certified[.]" *Id.* ¶ 1.1.
- "Certification will require TWO (2) days of training in San Juan, Puerto Rico, and a TEN (10) day prior notice from Sunshine shall be required prior to scheduling classes for certification by Ensysa. Ensysa agrees to certify the Contractor at no charge to Sunshine or the Contractor." *Id.* ¶ 1.1.1
- "Ensysa hereby agrees to supervise the installation of the Equipment at the Shopping Center . . . . Ensysa shall certify the installation as complete and proper to meet warranty standard. Ensysa shall also cause the manufacturer ("LG") to approve the startup . . . of the Equipment. Supervision shall cease upon the startup. All cost related to the supervision of the installation and the startup shall be borne

*Sunshine Shopping Center v. LG Electronics Panama, S.A. et al*
1:15-cv-00041-WAL-EAH
Report and Recommendation
Page 5

- by Ensysa. Ensysa shall not assign or delegate any services written above to anyone." *Id.* ¶ 1.2
- "Ensysa shall provide Contractor with all pertinent information about the Equipment and the correct installation design of the Equipment to enable Contractor to correctly install the Equipment such that the Equipment shall fulfill the Requirements, which information shall include, but not be limited to, the correct pipe dimensions, length and all other installation details. Ensysa shall also cooperate with Sunshine, the Contractor and the Virgin Islands Water and Power Authority with respect to any information required by them. Ensysa shall further reasonably cooperate with any contractor and Sunshine in good faith for the duration of the warranty periods . . . in relation to any issue with the equipment." *Id.* ¶ 2.8.

The Contract contained certain warranties, specifically:

- "Ensysa acknowledges that Sunshine is relying on Ensysa's representations and warranties in entering into this Contract. Specifically, Ensysa warrants that it has satisfied itself that it has sufficient information concerning the Areas to be served, including, but not limited to, the size, configuration, construction and uses thereof, to conduct an accurate load calculation and HVAC design analysis enabling Ensysa to specify the air conditioning equipment and configuration that will be required to fulfill the Requirements." *Id.* ¶ 4.2(a).
- "Ensysa is an authorized dealer of LG and has all the proper experience and expertise to sell and supervise the installation of LG equipment in the US Virgin Islands." *Id.* ¶4.2(b).

The merger clause stated that the Contract "contains the full understanding of the [p]arties with regard to the subject matter hereof. . . . Any prior Contracts, written or oral, between the Parties with regard to the subject matter hereof are merged herein." *Id.* ¶ 5.3.

Sunshine provided Ensysa a $127,182.75 letter of credit for the air conditioning equipment in late November 2013. *See* Dkt. No. 127-3 (Letter of Credit). The contract specified that, upon receipt of the letter of credit, Ensysa would deliver equipment shipping from Puerto Rico within ten business days and deliver equipment shipping from Korea within ninety days. Dkt. No. 127-2 ¶ 2.3. However, despite repeated emails from Sunshine

*Sunshine Shopping Center v. LG Electronics Panama, S.A. et al*
1:15-cv-00041-WAL-EAH
Report and Recommendation
Page 6

requesting an update regarding delivery of the goods, by December 30, 2013, Sunshine had not received any information about the status of the shipment. *See* Dkt. No. 127-4 (Compiled Emails) at 12-13. A few days later, Ensysa closed its Training Academy, which offered training and certification for installers of LG products. Dkt. Nos. 125-1 and 128, ¶¶ 11-12; Dkt. No. 127-4 at 15.[4] An email from Ensysa to LG, dated January 7, 2014, indicated that the shutdown would be effective the following day. Dkt. No. 127-4 at 15. Sunshine was not copied on that email. *Id.*

On January 8, 2014, Sunshine contacted Ensysa asking for an updated delivery date. It also notified Ensysa that it wanted to schedule Don Pogue, an HVAC contractor, and his employee to travel to Puerto Rico for certification at the Academy. Dkt. Nos. 125-1 and 128, ¶ 15; Dkt. No. 127-4 at 12-13. Two days later, Ensysa responded that the equipment would be shipped during the week of January 27, 2014. Dkt No. 127-4 at 11. Ensysa did not address Sunshine's certification request in that email; Sunshine asked again about scheduling training and certification for the installers in a January 10, 2014 email but received no response. *Id*.

On January 14, 2014, Ensysa terminated its relationship with LG effective February 15, 2014. Dkt. Nos. 125-1 and 128, ¶ 21; Dkt. No. 125-6 (Ensysa email to LG in Spanish). The email concerning Ensysa's termination of its relationship with LG also did not copy Sunshine.

---

[4] Ensysa claimed that it shut down the Training Academy due to "LG's continuous failure to ship equipment to Ensysa." Dkt. No. 125-1 ¶ 11. However, the emails provided suggested that, as of January 7, 2014, Ensysa owed LG $ 629,864.00, and LG notified Ensysa that LG would not proceed with new orders because of this debt. Dkt. No. 127-4 at 15.

*Sunshine Shopping Center v. LG Electronics Panama, S.A. et al*
1:15-cv-00041-WAL-EAH
Report and Recommendation
Page 7

*See* Dkt. No. 127-4 at 15. After January 14, 2014, LG assumed Ensysa's responsibilities for the air conditioning contract with Sunshine. Dkt. Nos. 125-1 and 128, ¶¶ 22-23; Dkt. No. 125-7 (Ensysa to LG Email). Emails between Sunshine and LG dated February 7, 2014 indicated that LG had agreed to take "full responsibility in place of Ensysa on the common areas agreement." Dkt. No. 125-7. Eventually, Sunshine requested that it be permitted to return all of the air conditioning equipment purchased from Ensysa and LG to LG because of Sunshine's "great difficulty getting the equipment installed." *See* Dkt. No. 127-4 at 17-18.

### B. The Parties' Arguments

Ensysa argued that it complied with its contractual obligations in selling the air conditioning equipment to Sunshine. Dkt. No. 127 at 3. In its view, the contract with Sunshine called for nothing "beyond the sale of equipment because Ensysa did not do design work and was not a contractor involved in the installation of air conditioning equipment." *Id*. at 3-4. At the same time, Ensysa also contended that the contract required it to (a) sell equipment, (b) train and certify a contractor, and (c) supervise installation of the equipment. *Id*. at 4-5.[5] Ensysa asserted that it met the first obligation (the sale) but that "the other Ensysa obligations under the contract were never triggered because they were dependent on Sunshine's obligations which Sunshine never fulfilled." *Id*. For example, the obligation to train and certify a contractor was conditioned on Sunshine selecting and hiring a contractor, which Sunshine "never effectively did before Ensysa shut down the academy" on January 8,

---

[5] Sunshine did not dispute that these fell within Ensysa's duties, but it asserted that Ensysa had additional duties under the contract. Dkt. No. 129-1 at 4-7.

2014. *Id.* at 5. Similarly, Ensysa stated that the obligation to supervise the installation was never triggered because the installation never began. *Id.* Thus, while Ensysa admitted its nonperformance, it argued that it did not breach the contract because its obligations to train and certify the contractor and supervise the installation were never triggered because certain conditions precedent were unfulfilled, and therefore it was entitled to summary judgment on the breach of contract claim.[6] As support for its position, it pointed to the contract and an affidavit of its President, Rolando Avila Champana, in which Champana echoed Ensysa's arguments that Sunshine never gave Ensysa "effective" notice.[7] *See, e.g.*, Dkt. No. 125-2 ¶ 13 ("Sunshine procrastinated throughout and it never gave Ensysa effective notice that it had actually retained a contractor nor did it give Ensysa the required ten (10) days prior notice to schedule the training.").

In response, Sunshine argued that, because the contract is unambiguous, the Parol Evidence Rule (and the contract's merger clause) barred admission of Ensysa's use of the Champana affidavit to vary or contradict its explicit contractual obligations to Sunshine. Dkt. No. 129-1 at 2-3. It maintained that Ensysa's obligations extended beyond that of a passive seller, citing the "clear and unambiguous" provisions in the contract discussing Ensysa's

---

[6] Although Ensysa never used the phrase "condition precedent" in its brief, it used that terminology at oral argument on the motion.

[7] Ensysa also cited its Statement of Facts, but this does not constitute evidence to support a motion for summary judgment. The Statement of Facts is merely a requirement under the Local Rules of Civil Procedure Rule 56.1; parties are to list facts they contend are undisputed with citation to supporting record evidence. The Court has considered the underlying record evidence here.

training, supervision, and installation duties, and the warranties it provided. *Id*. at 4-7. Those provisions contained no conditions precedent beyond the logical condition that Sunshine had to select a contractor before Ensysa could certify him. *Id*. at 4-7. Finally, it contended that Ensysa's motion failed to articulate a coherent legal theory of defense, and that, even if it did, Ensysa had not (and could not) establish any delay or impossibility that would excuse its nonperformance. *Id*. at 10-12.

In reply, Ensysa reiterated the arguments made in its opening brief. *Id*. at 2-4. It also argued that Sunshine's delay in selection of a contractor excused its nonperformance. *Id*. at 5-7.

In October 2022, the Court held a hearing on the motion for summary judgment. The Court noted that Ensysa's motion offered no argument on the negligent misrepresentation claim. The Court asked Ensysa's counsel if the motion should be construed as one for partial summary judgment. Counsel answered in the affirmative. The Court will therefore treat the motion as such.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome

*Sunshine Shopping Center v. LG Electronics Panama, S.A. et al*
1:15-cv-00041-WAL-EAH
Report and Recommendation
Page 10

of the suit under the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). In general, "matters involving the construction or interpretation of unambiguous contracts are questions of law and are appropriate for summary judgment." *Erie Ins. Exch. v. Virgin Islands Enterprises Inc.*, 264 F. Supp. 2d 261, 263 (D.V.I. 2003).

### II. Ensysa is not entitled to summary judgment.

The elements of a breach of contract claim in the Virgin Islands are "(1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages." *Ainger v. Great Am. Assurance Co.*, Civ. No. 2020-005, 2022 WL 4379794, at *7 (D.V.I. Sept. 22, 2022) (quoting *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 621 (2017)).

The determinative issue here concerns the duties imposed on Ensysa by the express provisions of the contract.[8] Ensysa did not explicitly argue that the contract was ambiguous; rather, it read a very specific condition precedent into the terms of the contract— that Sunshine was required to select a contractor while Ensysa's Training Academy remained open in order for its training, supervision, and installation obligations to be triggered under the contract. Dkt. No. 139 at 2-3. It further argued that Sunshine failed to timely select a

---

[8] Neither party has disputed that a valid contract existed between them. Dkt. Nos. 125-3; 127-2. Further, Ensysa's argument regarding breach centered on its incorrect understanding of its contractual duties as discussed below, and the parties did not address the issue of damages in their briefing.

contractor before Ensysa closed its Training Academy, and that failure excused Ensysa's remaining duties to train and certify the contractor and supervise the installation. *Id.* Ensysa cited no case law defining condition precedent[9] or discussing how condition precedents are articulated; it conclusorily argued that it was "undeniable that Ensysa never breached its contract with Sunshine" and thus could not be found liable. The Court rejects Ensysa's argument.

"In examining a contract, the Court is to interpret the contracting parties' intent as objectively manifested by them." *Sunshine Shopping Ctr., Inc. v. Kmart Corp.,* 85 F. Supp. 2d 537, 540 (D.V.I. 2000). "The plain meaning rule applies in ascertaining the intent of the parties to a contract, which assumes their intent is expressed in the writing itself." *Finley v. Mole*, Civ. No. 2014-52, 2015 WL 1541126, at *4 (D.V.I. Apr. 1, 2015) (internal quotation marks omitted). When the words used are clear and unambiguous, intent is ascertained from the express language of the contract. *Id.* If a contract provision is unambiguous, i.e. can reasonably be read only one way, "'the court will interpret it as a matter of law.'" *Id.* (quoting *Sunshine Shopping Ctr.*, 85 F. Supp. 2d at 540).

The plain language of the contract sets out the scope of the parties' duties. Sunshine was to compensate Ensysa for the equipment and select an HVAC contractor, giving 10 days' notice of its selection. Dkt. No. 127-2 ¶¶ 1.1, 1.1.1. Ensysa was to provide two days training

---

[9] A condition precedent is "either an act of a party that must be performed or a certain event that must happen before a contractual right accrues or contractual duty arises." Richard A. Lord, Williston on Contracts, § 38:7 (4th ed. 1993).

for the contractor in San Juan, certify him, and then supervise the installation of the equipment on St. Croix. Dkt. No. 127-2 ¶¶ 1.1.1,1.2.

Sunshine named the contractor and provided notice to Ensysa on January 8, 2014. Dkt. No. 125-5. The contract contained no date or deadline by which Sunshine was to have selected the HVAC contractor, nor was there a "time is of the essence" provision suggesting that the selection needed to take place within an expedited period of time. Ensysa was then required to certify the contractor after two days of training it provided in San Juan, Puerto Rico. Dkt. No. 1.1.1. But after having received notification of the selection of a contractor from Sunshine, Ensysa did not train or certify him, much less supervise the installation.

Ensysa's argument that, in order for it to have completed its duties, Sunshine had to select a contractor while its Training Academy remained open, is unsupported by the language of the contract, which contained no requirement that that condition precedent had to be met before Ensysa's obligations were triggered. Ensysa's obligations were conditioned only by being notified by Sunshine that it had selected a contractor with a 10-day lead time for scheduling the training. *See Sohm v. Scholastic Inc.*, 959 F.3d 39, 46 (2d Cir. 2020) (noting that while "specific, talismanic words are not required" the use of the words if, on condition that, subject to, etc. can make plain a condition precedent) (applying New York law). Rather, the Court relies on the unambiguous manifestation of the parties' intent—the contract language—and will not import this new condition precedent—to which Sunshine did not

*Sunshine Shopping Center v. LG Electronics Panama, S.A. et al*
1:15-cv-00041-WAL-EAH
Report and Recommendation
Page 13

agree—into an unambiguous contract.[10] Thus, Ensysa had a duty to train and certify the contractor named by Sunshine based on the plain language of the contract.[11]

Having determined that the contract did not contain a condition precedent—that Sunshine was required to name an HVAC contractor while the Training Academy was open—the unambiguous contract provisions set forth the scope of Ensysa's duties. Even if the Court were to consider the scant evidence Ensysa offered, the evidence merely reiterated the legal conclusions it made in support of its argument for summary judgment.[12] Therefore, Ensysa had to certify and train Sunshine's chosen contractor, which it admittedly did not do.

---

[10] The Court need not address Ensysa's parol evidence argument because, even considering the Champana affidavit, the Court finds the contract unambiguous. In the Third Circuit, a court may consider "the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning. . . . If a reasonable alternative interpretation is suggested, even though it may be alien to the judge's linguistic experience, objective evidence in support of that interpretation should be considered by the fact finder." *Mellon Bank, N.A., v. Aetna Bus. Credit, Inc.*, 619 F.2d 100, 1013 (3d. Cir. 1980). But here, even considering the affidavit and Champana's understanding of the contract laid out in it, the contract is not subject to multiple reasonable interpretations and does not contain the specific condition precedent.

[11] Sunshine conceded at oral argument that the certification provision, if taken in isolation, logically contained some kind of "condition precedent," in the sense that it would have been impossible for Ensysa to certify an unnamed contractor. But the Court need not consider conditions precedent where the express, unconditional provision covers the scope of the parties' obligations. *See Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d. 107, 111 (3d. Cir. 1994)) ("'[W]hen the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement.'").

[12] Ensysa offered Champana's affidavit, which merely contained legal conclusions passed off as fact. Such an affidavit, containing legal conclusions passed off as facts, is insufficient to create a question of fact as to the meaning of a contract's terms. *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d. Cir. 1985) ("An affidavit that is essentially conclusory and lacking in specific facts is inadequate to satisfy the movant's burden [to survive summary judgment].") (internal quotation marks omitted).

*Sunshine Shopping Center v. LG Electronics Panama, S.A. et al*
1:15-cv-00041-WAL-EAH
Report and Recommendation
Page 14

## CONCLUSION

Ensysa argued that it was entitled to summary judgment as a matter of law based on its interpretation of the terms of the contract. The Court rejects Ensysa's incorrect interpretation of the relevant contract terms and the duties flowing therefrom because the terms were unambiguous. As such, Ensya is not entitled to summary judgment.

Accordingly, the Court **RECOMMENDS** that Enysa's motion for summary judgment be **DENIED** because the contract is unambiguous as to the scope of Ensysa's duties. There was no condition precedent that absolved Ensysa from meeting its training, certification, and installation obligations under the contract terms.

Any objections to this Report and Recommendation must be filed in writing within fourteen (14) days of receipt of this notice, 28 U.S.C. § 636(b)(1), and must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis of such objection." LRCi 72.3.  Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge.  *See, e.g., Thomas v. Arn*, 474 U.S. 140 (1985).

ENTER:

Dated: November 1, 2022

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE